UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RAFEEK MOHAMED,

        Plaintiff,

v.

FEDERAL HOME LOAN MORTGAGE CORP. (FREDDIE MAC), RADIAN REAL ESTATE MANAGEMENT, LLC, THE RADIAN GROUP, INC., and MILES PRESERVATION, LLC,

        Defendants.

**MEMORANDUM & ORDER**
22-CV-01243 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff Rafeek Mohamed brought this action in Kings County Supreme Court on January 28, 2022, alleging claims under Sections 200, 240(1) and 241(6) of the New York Labor Law ("NYLL") against Defendants Federal Home Loan Mortgage Corp. ("Freddie Mac"), Radian Real Estate Management, LLC, The Radian Group, Inc. (collectively "Radian"), and Miles Preservation, LLC ("Miles").  ECF No. 1-2 (Compl.).  The case was removed to this Court on March 7, 2022.  ECF No. 1 (Notice of Removal).  Currently pending before me are the parties' motions for summary judgment.  Plaintiff moves for summary judgment against all Defendants on his Section 240(1) claim.  ECF No. 44 (Plaintiff Mot.).  Freddie Mac moves for summary judgment against Radian on claims for contractual indemnification and breach of contract.  ECF No. 45 (Freddie Mac Mot.).  Radian moves for summary judgment against Miles for contractual indemnification.  ECF No. 46 (Radian Mot.).  Miles moves for summary judgment against Plaintiff on his Section 241(6) claim.  ECF No. 47 (Miles Mot.).  And all Defendants move against Plaintiff on his Section 200 claim.  ECF No 45; ECF No. 46; ECF No. 47.

For the reasons set forth below, the Court: (1) denies Plaintiff's motion for summary judgment on his Section 240(1) claim; (2) grants Freddie Mac's motion for summary judgment on Plaintiff's Section 200 claim and denies Freddie Mac's motion for summary judgment on its contractual claims; (3) grants Radian's motion for summary judgment on Plaintiff's Section 200 claim and denies Radian's motion for summary judgment on its contractual claims; and (4) grants Miles's motion for summary judgment on Plaintiff's Section 200 claim and partially grants and partially denies Miles's motion for summary judgment on Plaintiff's Section 241(6) claim.

## BACKGROUND

Unless otherwise indicated, the following facts are undisputed.  On July 30, 2020, Plaintiff was working on a repair project at 778 Madison Street, Brooklyn, New York (the "Property"), which involved removing and replacing at least a portion of the flooring and subflooring of the fourth floor of the Property.  ECF No. 32 ¶¶ 1, 8, 15 (Freddie Mac Resp. to Plaintiff 56.1 Statement); ECF No. 33 ¶¶ 1, 8, 15 (Radian Resp. to Plaintiff 56.1 Statement); ECF No. 39 ¶¶ 1, 8, 15 (Miles Resp. to Plaintiff 56.1 Statement).  At all times relevant to this action, Freddie Mac was the owner of the Property, which it acquired following a foreclosure proceeding.  ECF No. 32 ¶ 2; ECF No. 33 ¶ 2; ECF No. 39 ¶ 2.  Radian managed the Property, and in this role, Radian had authority to hire companies to perform work at the Property and to manage the "vendor network" as defined in the agreement between Freddie Mac and Radian.[1]  ECF No. 32 ¶ 4; ECF No. 33 ¶ 4; ECF No. 39 ¶ 4; ECF No. 45-2 at 29 (Freddie Mac-Radian

---

[1] Freddie Mac originally entered into a services agreement with Green River Capital, LLC on January 1, 2018.  ECF No. 45-2.  Green River Capital, LLC eventually changed its named to Radian Real Estate Management, LLC.  The services agreement for property management remained the same in all other respects.  ECF No. 54-1 ¶ 4 (Plaintiff Resp. to Miles 56.1 Statement).

Agreement).[2]  The agreement also contained an indemnification clause, whereby Radian agreed to, in relevant part:

> defend, indemnify and hold harmless Freddie Mac and its Affiliates . . . from and against any and all claims brought by third parties and related injuries, damages, liabilities, judgments and settlements . . . arising out of or related to:  (A) any negligence or willful misconduct by [Radian], its subcontractors or their respective directors, officers, partners, employees or agents[.]

ECF No. 45-2 at 16, ¶ 8(a)(i)(A).  The agreement further required Radian to "maintain, at its expense, complete and comprehensive insurance coverage." *Id.* at 17, ¶ 8(c); *see also id.* at 127–28 (insurance requirements).  As part of that insurance coverage, Radian was required to procure "[c]ommercial general liability coverage in the minimum amount of $500,000 [*sic*] each occurrence and $2,000,000 annual aggregate." *Id.* at 127, ¶ 1(a).  This insurance would insure against, among other things, liability arising out of or from bodily injury or personal injury. *Id.* Radian was also required to procure "[u]mbrella liability coverage in the minimum amount of $5,000,000 [*sic*] each claim and annual aggregate." *Id.* ¶ 1(e).  And finally, as relevant here, Radian was required to name Freddie Mac as an additional insured (except for Radian's professional liability policy and workers' compensation policy). *Id.* at 128, ¶ 2(e).

As manager of the Property, Radian hired Miles to be the "preservation and maintenance" vendor.  ECF No. 47-9 at 23, ¶ 1 (Radian-Miles Agreement).  Although the parties disagree as to whether Miles's scope of work included Miles performing the work contemplated in the agreement itself, the agreement requires any of Miles's "personnel and subcontractors" that performed work on the Property to be "experienced, properly trained, supervised, appropriately licensed and otherwise qualified and capable of performing the Services" outlined in the

---

[2]  Unless otherwise noted, the Court refers to the pages assigned by the Electronic Case Files system ("ECF").

3

agreement. *Id.* at 34, ¶ 6. Similar to the agreement between Freddie Mac and Radian, Miles agreed to:

> indemnify and hold harmless [Radian] and its Affiliates . . . from and against any and all claims brought by third parties and related injuries, damages, liabilities, judgments and settlements . . . arising out of or related to: (A) any negligence or willful misconduct by [Miles], its subcontractors or their respective directors, officers, employees or agents[.]

*Id.* at 15, ¶ 7(a)(i)(A).

Miles hired non-party R&M Renovations to perform work at the Property. ECF No 41 ¶¶ 1, 8 (Miles Resp. to Radian 56.1 Statement). Plaintiff was employed by R&M and his scope of work on July 30, 2020, involved removing and replacing at least a portion of the flooring and subflooring of the fourth floor of the Property. ECF No. 32 ¶ 8; ECF No. 33 ¶ 8; ECF No. 39 ¶ 8. Prior to that date, Radian and Miles were aware, through correspondence and engineer reports, that because of a hole in the roof, water leakage had caused structural damage to the flooring on the fourth floor. ECF No. 32 ¶¶ 12–13; ECF No. 33 ¶¶ 12–13; ECF No. 39 ¶¶ 12–13. Miles had uploaded a bid for work into the internal report system—which both Radian and Freddie Mac had access to—indicating that the floor was a "safety issue. The wood is rotted, and there are holes and someone can fall through." ECF No. 44-9 at 38–39 (Wooley Dep. Tr.).

Plaintiff testified that when he arrived at the Property on July 30, 2020, he was instructed to work on the subflooring of the fourth floor, and he and his coworker brought 20 sheets of plywood up there. ECF No. 32 ¶¶ 15–16; ECF No. 33 ¶¶ 15–16; ECF No. 39 ¶¶ 15–16. Plaintiff also testified that once he reached the fourth floor, he began removing the loose linoleum floor. ECF No. 32 ¶ 17; ECF No. 33 ¶ 17; ECF No. 39 ¶ 17. Plaintiff observed that the existing plywood showed signs of rotting and was severely discolored with mold. ECF No. 32 ¶¶ 17–19; ECF No. 33 ¶¶ 17–19; ECF No. 39 ¶¶ 17–19. After Plaintiff described the condition of the floor to his supervisor, Mr. Ramnarine, Mr. Ramnarine instructed Plaintiff to start installing the

plywood sheets on top of the otherwise rotting floor.  ECF No. 32 ¶ 20; ECF No. 33 ¶ 20; ECF No. 39 ¶ 20.  As Plaintiff carried the first sheet of plywood across the floor to install it, the floor collapsed under him, and he fell to the floor below.  ECF No. 32 ¶ 22; ECF No. 33 ¶ 22; ECF No. 39 ¶ 22.  Plaintiff testified that he was not provided with any safety equipment to protect him from the risk of falling.  ECF No. 32 ¶ 23; ECF No. 33 ¶ 23; ECF No. 39 ¶ 23.  Plaintiff does not dispute that R&M Renovations provided Plaintiff with all the materials and equipment to perform this work at the Property and that Plaintiff did not work with anyone at the Property who was not an R&M employee.  ECF No. 54-1 ¶¶ 18–19.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[3]  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  "The mere existence of a scintilla of evidence" in support

---

[3] Unless noted, case law quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes.

5

of the non-movant will not alone defeat a summary judgment motion. *Anderson*, 477 U.S. at 252.

In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). Although "courts must refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments," the non-moving party must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party." *Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 456 (2d Cir. 2022) (emphasis in original). "[R]eliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion"; rather, the nonmoving party must "go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

## **DISCUSSION**

### I.     Plaintiff's Section 240(1) Claim

Plaintiff moves for summary judgment on his Section 240(1) claim against all Defendants. ECF No. 44-1. Plaintiff argues that Freddie Mac, as the owner of the Property, is strictly liable under Section 240(1), *see id.* at 7, and that Radian and Miles, as the manager of and contractor for the Property, respectively, are subject to Section 240(1) liability, *see id.* at 8–9. Defendants respond that Plaintiff is not entitled to summary judgment on his Section 240(1) claim because Plaintiff was the sole proximate cause of the accident. ECF No. 51 at 4–6

6

(Freddie Mac Opp. to Plaintiff Mot.); ECF No. 55 at 3–4 (Radian Opp. to Plaintiff Mot.); ECF No. 58 at 10–12 (Miles Opp. to Plaintiff Mot.).[4]

Section 240(1) of the New York Labor Law requires building owners and contractors:

> in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure [to] furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y. Lab. Law § 240(1). Pursuant to the statute, owners and contractors who fail to "provide proper protection to workers employed on a construction site" which then "proximately causes injury to a worker" are absolutely liable for that injury. *Wilinski v. 334 E. 92nd Hous. Dev. Fund Corp.*, 959 N.E.2d 488, 491 (N.Y. 2011). Although Plaintiff contends that Freddie Mac, as the owner of the Property, is subject to "strict liability" for his injuries, *see* ECF No. 44-1 at 7, "[v]iolation of the statute alone is not enough" to impose liability. *Wojcik v. 42nd St. Dev. Project*, 386 F. Supp. 2d 442, 451 (S.D.N.Y. 2005). Indeed, "[n]ot every worker who falls at a

---

[4] Radian and Miles further argue that they are generally not proper labor law Defendants because they did not supervise Plaintiff's work. ECF No. 55 at 2; ECF No. 58 at 6–8. The Court disagrees. "A party is deemed to be an agent of an owner or general contractor under [Sections 240(1) and 241(6) of] the Labor Law when it has supervisory control and authority over the work being done where a plaintiff is injured." *Diaz v. Trevisani*, 82 N.Y.S.3d 549, 554 (N.Y. App. Div. 2018) (affirming denial of motion for summary judgment on Section 240(1) and Section 241(6) claims). "[T]he test of whether a defendant is a statutory agent subject to liability under those sections is not whether it actually supervised the work, but whether it had the authority to do so." *Merino v. Cont'l Towers Condo.*, 72 N.Y.S.3d 59, 61 (N.Y. App. Div. 2018) (finding motion court erred in determining defendant was not liable under Sections 240(1) and 241(6) where defendant had authority to supervise the work at issue). Here, although Radian and Miles may not have directly supervised and directed Plaintiff's work at the Property, *see* ECF No. 52-1 ¶ 10 (Plaintiff Resp. to Radian 56.1 Statement); ECF No. 54-1 ¶¶ 17–23, they were granted authority to supervise Plaintiff under their relative contracts associated with the Property. ECF No. 45-2 at 30, 40, 113; ECF No. 47-9 at 23, 34. They are therefore proper labor law Defendants under Sections 240(1) and 241(6). However, as discussed *infra* § II, the Court agrees that whether Defendants *actually* exercised control over the method or manner of the work giving rise to Plaintiff's injuries is determinative for liability as to Plaintiff's Section 200 claim.

construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240(1). Rather, liability is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein." *Narducci v. Manhasset Bay Assocs.*, 750 N.E.2d 1085, 1089 (N.Y. 2001). Accordingly, "the statutory protection does not extend to workers who have adequate and safe equipment available to them but refuse to use it." *Wojcik*, 386 F. Supp. 2d at 452.

      Defendants argue that they are not liable under Section 240(1) because Plaintiff's actions were the proximate cause of his injuries. ECF No. 51 at 5–6; ECF No 55 at 3–4; ECF No. 58 at 10–12. Namely, Defendants argue that (1) Plaintiff was injured by the hazard he was there to remedy, *see* ECF No 55 at 3, and (2) Plaintiff was aware that the floor was deteriorating, reported it to his supervisor, but then nonetheless walked over the floor, *see* ECF No. 51 at 5–6; ECF No 55 at 3–4; ECF No. 58 at 10–12. Both arguments have merit and, at a minimum, present issues of fact precluding summary judgment. The New York Court of Appeals has distinguished between cases where a plaintiff is injured from the defect he was set to remedy and where a plaintiff is injured from objects unrelated to his scope of work. *See, e.g.*, *Wilinski*, 959 N.E.2d at 495 ("This [case] stands in contrast to cases where the objects that injured the plaintiff's [*sic*] were themselves the target of demolition when they fell. . . . In those instances, imposing liability for failure to provide protective devices to prevent the walls or objects from falling, when their fall was the goal of the work, would be illogical."); *Salazar v. Novalex Contracting Corp.*, 960 N.E.2d 393, 396 (N.Y. 2011) ("Put simply, it would be illogical to require an owner or general contractor to place a protective cover over, or otherwise barricade, a three- or four-foot-deep hole when the very goal of the work is to fill that hole with concrete."). In the case where a plaintiff is injured from the defect he was hired to remedy "neither party is

8

entitled to summary judgment on plaintiff's Labor Law § 240(1) claim." *Wilinski*, 959 N.E.2d at 495. Rather, "[w]hether plaintiff's injuries were proximately caused by the lack of a safety device of the kind required by the statute is an issue for a trier of fact to determine." *Id.* Such is the case here, where Plaintiff was injured by the structurally compromised floor he was tasked with fixing. ECF No. 32 ¶¶ 12–13, 15–16; ECF No. 33 ¶¶ 12–13, 15–16; ECF No. 39 ¶¶ 12–13, 15–16; ECF No. 44-9 at 38–39.

Furthermore, the parties have presented issues of fact regarding whether Plaintiff's actions were the proximate cause of his injuries. Plaintiff argues that Defendants should have provided him with specific safety devices to assist in his repair of the floor. *See* ECF No. 44-1 at 18. Miles argues that there are issues of fact regarding whether Plaintiff was provided with, and used, safety measures at the time of the incident. ECF No. 58 at 8. The Court agrees. Plaintiff testified that his employer, R&M, generally did not provide him with safety equipment. ECF No. 47-5 at 58–59 (Plaintiff Dep. Tr.). However, Plaintiff's supervisor, Mr. Ramnarine, testified that he kept safety equipment, such as hard hats and harnesses, in the company's trucks and that he discussed safety measures with his team. ECF No. 51-2 at 107–10 (Ramnarine Dep. Tr.). Mr. Ramnarine nevertheless did not instruct Plaintiff to use the safety equipment. ECF No. 58-1 at 44–47 (Ramnarine Dep. Tr.). All Defendants also contend that it was Plaintiff's own actions—*i.e.*, walking over the rotted floor, knowing it was structurally compromised—that proximately caused his injuries. ECF No. 51 at 5–6; ECF No. 55 at 3–4; ECF No. 58 at 10–12. Indeed, Plaintiff testified that he knew and had previously discussed the condition of the floor with Mr. Ramnarine prior to walking over it. ECF No. 47-5 at 112–13, 133–34. Because the record is replete with conflicting testimony, "[t]he proximate cause of [P]laintiff's injuries is . . . a factual issue improper for summary judgment." *Pollack v. Safeway Steel Prod., Inc.*, 457 F.

9

Supp. 2d 444, 449 (S.D.N.Y. 2006). Accordingly, the Court denies Plaintiff's motion for summary judgment on his Section 240(1) claim.

## II. Plaintiff's Section 200 Claim

All Defendants have moved for summary judgment on Plaintiff's Section 200 claim. ECF No. 45; ECF No. 46; ECF No. 47. Plaintiff does not oppose Freddie Mac's motion for summary judgment on this claim. ECF No. 53 (Plaintiff's Opp. to Freddie Mac's Mot.). And Plaintiff does not oppose Radian's and Miles's motions to the extent that they are based on the "dangerous condition theory." ECF No. 52 at 1 (Plaintiff Opp. to Radian Mot.); ECF No. 54 at 2 (Plaintiff Opp. to Miles Mot.). However, Plaintiff opposes Radian's and Miles's motions regarding this claim under the "means and methods" theory. ECF No. 52 at 1–3; ECF No. 54 at 3–4. In other words, Plaintiff does not refute "[t]o the extent the accident was caused by the dangerous, 'structurally compromised' condition of the floor," that "no responsibility rests upon an owner of real property to one hurt through a dangerous condition which he has undertaken to fix." ECF No. 52 at 1 (citations omitted); *accord* ECF No. 54 at 2. Nevertheless, Plaintiff argues that "to the extent the accident was caused by the dangerous means and methods of the work, *i.e.*[,] the failure to put fall protection in place and and/or the failure to otherwise brace/support the area in order for Plaintiff and other workers to be able to perform the work safely," there are material issues of fact precluding granting Radian and Miles summary judgment on the Section 200 claim. ECF No. 52 at 1–3; *accord* ECF No. 54 at 3–4. Radian and Miles respond that they are not liable under Section 200 because they did not direct or control Plaintiff's work. ECF No. 63 at 4–5 (Radian Reply); ECF No. 64 at 6–10 (Miles Reply). The Court agrees with Defendants.

> Section 200 of the New York Labor Law provides:
>
> All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons.

N.Y. Lab. Law § 200. Where it is alleged that plaintiff's injuries resulted from the "methods or materials of the work," a party may be liable under Section 200 if it had "the authority to supervise and control the work actually being performed." *Quilambaqui v. Men at Work Constr. Corp.*, No. 18-cv-4824, 2021 WL 11690892, at *5 (E.D.N.Y. Aug. 25, 2021) (citing cases). Unlike the question of whether a party is liable under Sections 240(1) and 241(6), *see supra* note 4, "which only requires the *authority* to control the condition giving rise to the injury— liability for a defect in the 'means or method' of the work requires *actual exercise* of control over the method or manner of working giving rise to a plaintiff's injury." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 44 F. Supp. 3d 409, 432 (S.D.N.Y. 2014) (emphasis in original); *see also Quilambaqui*, 2021 WL 11690892, at *5 ("[B]uilding owners and general contractors may be liable only if they had the authority to supervise and control the work actually being performed. . . . Retention of general supervisory control, by contrast, is insufficient to establish the necessary authority for liability to attach under § 200.").

Here, although Radian and Miles had "general supervisory control" over the work being performed at the Property, *see supra* note 4, the undisputed evidence shows that neither Defendant *actually exercised* control over the method or manner of work giving rise to Plaintiff's injuries. Indeed, Plaintiff does not dispute that R&M provided him with all the materials and equipment to perform the work at the Property and that Plaintiff did not work with anyone at the Property who was not an R&M employee. ECF No. 54-1 ¶¶ 17–19. Plaintiff also does not

11

dispute that Radian and Miles did not give any instructions to Plaintiff about how the work at the Property should be performed. ECF No. 52-1 ¶¶ 10–11; ECF No. 54-1 ¶¶ 20–23. This case is therefore distinguishable from others where the evidence showed defendants were present on the worksite and provided equipment for the workers. *See, e.g.*, *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 54 F. Supp. 3d 301, 315–16 (S.D.N.Y. 2014) (denying summary judgment); *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 57 F. Supp. 3d 328, 341 (S.D.N.Y. 2014) (triable issues of fact precluding summary judgment existed where evidence indicated defendants played a role in the choice of equipment and safety procedures). Because the undisputed evidence in this case shows that Radian and Miles did not *exercise* any supervisory control over the work giving rise to Plaintiff's injuries, they are entitled to summary judgment on Plaintiff's Section 200 claim. Plaintiff's Section 200 claim is therefore dismissed as to all Defendants.

### III. Plaintiff's Section 241(6) Claim

Miles moves for summary judgment on Plaintiff's Section 241(6) claim on the basis that the Industrial Code provisions Plaintiff alleges were violated cannot form the basis of a Section 241(6) claim. ECF No. 47-3 at 17. Specifically, Miles argues that Industrial Code Sections 23-1.16, 23-2.4, and 23-3.3 are "irrelevant/inapplicable to the facts of this case or they do not set forth concrete safety requirements and specifications" that were violated. *Id.*[5] Plaintiff concedes that Section 23-1.16 is inapplicable to this case because he was not provided with any safety belts or items referenced in the regulation. ECF No. 54 at 4. Plaintiff also concedes that

---

[5] Miles does not move for summary judgment on all of the Industrial Code Sections that Plaintiff alleges were violated. *Compare* ECF No. 1-2 at 12, ¶ 72, *with* ECF No. 47-3 at 17. Consequently, the Court does not analyze Plaintiff's Section 241(6) claim brought pursuant to Industrial Code Sections 23-1.7(b), 23-1.8, 23-1.11, and 23-1.17, and those claims therefore survive for trial.

12

Sections 23-2.4, 23-3.3(b)(3) and 23-3.3(b)(4) are inapplicable to this case. *Id.* at 4–5. However, Plaintiff opposes dismissal of his Section 241(b) claim as it relates to Sections 23-3.3(c) and 23-3.3(l). *Id.* at 6.

Section 241(6) of the New York Labor Law requires all contractors, owners, and their agents to provide "reasonable and adequate protection and safety in areas in which construction, excavation or demolition work is being performed." *Laverty v. Dobco, Inc.*, No. 21-cv-2592, 2024 WL 966013, at *8 (S.D.N.Y. Mar. 6, 2024). To succeed on a Section 241(6) claim, Plaintiff must demonstrate that his injuries were proximately caused by the violation of a regulation issued by the Commissioner of the Department of Labor. *Id.*; *see also Flores v. Crescent Beach Club, LLC*, 173 N.Y.S.3d 574, 578 (N.Y. App. Div. 2022) ("To succeed on a cause of action alleging a violation of Labor Law § 241(6), a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code provision that is applicable under the circumstances of the accident."). At issue here is Plaintiff's Section 241(6) claim predicated on Industrial Code Sections 23-3.3(c) and 23-3.3(l). N.Y. Comp. Codes R. & Regs. tit.12 §§ 23-3.3(c), 23-3.3(l); ECF No. 54 at 6. Section 23-3.3(c) requires continuing inspections during demolition operations "as the work progresses to detect any hazards to any person resulting from weakened or deteriorated floors or walls or from loosened material." Section 23-3.3(l) requires workers "working above the first floor or ground level in the demolition of any building or other structure" to "be provided with safe footing consisting of sound flooring, planking not less than two inches thick full size, adequately supported exterior grade plywood at least three-quarters inch think or other material of equivalent strength."

As an initial matter, Miles argues that these regulations do not apply because Plaintiff was not engaging in demolition work. ECF No. 47-3 at 19. The Industrial Code defines

13

demolition as "[t]he work incidental to or associated with the total or *partial* dismantling or razing of a building or other structure including the removing or dismantling of machinery or other equipment." N.Y. Comp. Codes R. & Regs. tit.12 § 23-1.4 (emphasis added). The undisputed evidence indicates that Plaintiff was tasked with removing and replacing the flooring and subflooring of at least a portion of the flooring on the fourth floor of the Property, and that Plaintiff's injuries occurred while he was in the process of removing and replacing the flooring. *See* ECF No. 32 ¶¶ 8, 17–22; ECF No. 33 ¶¶ 8, 17–22; ECF No. 39 ¶¶ 8, 17–22. Based on these undisputed facts, it's clear that Plaintiff engaged in "demolition" work as defined by the Industrial Code. *See Quizhpi v. S. Queens Boys & Girls Club, Inc.*, 87 N.Y.S.3d 187, 188–89 (N.Y. App. Div. 2018) (plaintiff engaged in "demolition work" where plaintiff was employed for an asbestos abatement project and was injured when a portion of the roof he walked over collapsed underneath him); *Phillips v. Powercrat Corp.*, 6 N.Y.S.3d 50, 51 (N.Y. App. Div. 2015) (plaintiff engaged in "demolition work" where plaintiff was employed to "clean out, remove machines, break down structures . . . and ship them out" and was injured in a fall from an unsecured ladder).

With respect to Section 23-3.3(c), Miles argues that the regulation does not apply to this case because the evidence indicates that the floor had been inspected and there was no concern that it would collapse. ECF No. 64 at 13.[6] Miles further argues that Plaintiff was injured by his actual performance of the work, rendering the regulation inapplicable to this case. *Id.* at 14; *see also Flores*, 173 N.Y.S.3d at 578 (party established "prima facie, the inapplicability of [Section

---

[6] Although this portion of Miles's argument is not material to the Court's analysis regarding Section 23-3.3(c), the Court finds this argument to be contradicted by Miles's own bid request for this repair work, which was uploaded into the internal report system and indicated that the floor was a "safety issue. The wood is rotted, and there are holes and someone can fall through." ECF No. 44-9 at 38–39.

14

23-3.3(c)] by demonstrating that the hazard arose from the plaintiff's actual performance of the demolition work itself, and not structural instability caused by the progress of the demolition"). The Court agrees. While questions of fact exist as to whether Plaintiff's actions were the proximate cause of his injuries as it relates to Section 240(1), here it is undisputed that Plaintiff was injured during the course of the demolition work itself. Indeed, Plaintiff admits that he was injured once he began carrying the first sheet of plywood across the deteriorated floor after he removed the linoleum flooring. ECF No. 32 ¶¶ 17–22; ECF No. 33 ¶¶ 17–22; ECF No. 39 ¶¶ 17–22. Because Plaintiff was injured in the initial phase of the project, he has failed to establish that there are triable issues of fact that his injuries were the result of a "structural instability caused by the progress of demolition rather than from the actual performance of work." *Lemache v. 600 W 144th St., LLC*, 212 N.Y.S.3d 914, at *6 (N.Y. Sup. Ct. 2024); *see also Reyes v. Sligo Constr. Corp.*, 186 N.Y.S.3d 321, 325 (N.Y. App. Div. 2023) (affirming summary judgment where defendants established plaintiff's injury was caused by the actual performance of the demolition work). The Court therefore grants Miles summary judgment on Plaintiff's Section 241(6) claim as it relates to Section 23-3.3(c), and Plaintiff may not proceed with his Section 241(6) claim on the basis of that regulation.

Plaintiff, however, has established that Section 23-3.3(l) applies to this case. Although Miles argues that "Plaintiff was not using accumulated debris or piled materials as a footing to perform his work," *see* ECF No. 64 at 14, Plaintiff has "submitted evidence that he was performing demolition work above ground level, and that the [floor] on which he was standing collapsed." *Cueva v. 373 Wythe Realty, Inc.*, 976 N.Y.S.2d 516, 517 (N.Y. App. Div. 2013); *see* ECF No. 32 ¶ 22; ECF No. 33 ¶ 22; ECF No. 39 ¶ 22. Consequently, Plaintiff has "demonstrated *prima facie* that he was not provided with sound flooring in violation of this

15

regulation." *Cueva*, 976 N.Y.S.2d at 517; *see also Lemache*, 212 N.Y.S.3d 914, at *7 ("As it is undisputed that the Plaintiff was standing on dismantled scaffolding racks when he was loading more dismantled scaffold materials into the truck at the time of his fall, and was not provided sound flooring, 12 NYCRR § 23-3.3(l) applies."). Because there are triable issues of fact as to whether Defendants provided, or were obligated to provide, reasonable and adequate protection for the worksite as defined in Section 23-3.3(l), Plaintiff may proceed with his Section 241(6) claim pursuant to that regulation.

To summarize, for the reasons set forth above, Plaintiff's Section 241(6) claim may proceed pursuant to Industrial Code Sections 23-1.7(b), 23-1.8, 23-1.11, 23-1.17, and 23-3.3(l). The case will not proceed with Plaintiff's Section 241(6) claim as it relates to Industrial Code Sections 23-1.16, 23-2.4, 23-3.3(b)(3), 23-3.3(b)(4) and 23-3.3(c).[7]

### IV. Defendants' Contract Claims

#### A. *Indemnification*

Freddie Mac moves for summary judgment against Radian, arguing that Plaintiff's claims "trigger Radian's obligation to defend and indemnify Freddie Mac." ECF No. 45 at 26. Similarly, Radian moves for summary judgment against Miles because "R&M is a subcontractor of Miles and [P]laintiff's injuries arose from R&M's negligence," thereby triggering the indemnification provision. ECF No. 46 at 15. Both indemnification provisions in the Freddie Mac-Radian Agreement and Radian-Miles Agreement require the respective indemnitor to indemnify and hold harmless against any "negligence or willful misconduct" by the indemnitor,

---

[7] Although Miles was the only Defendant to move on this claim, the Court finds the basis for which the Court granted Miles summary judgment on the Section 241(6) claim brought pursuant to Industrial Code Section 23-3.3(c) to apply to all Defendants, *see supra* § III, and separately finds that Plaintiff has abandoned his Section 241(6) claim brought pursuant to Industrial Codes Sections 23-1.16, 23-2.4, 23-3.3(b)(3), and 23-3.3(b)(4) against all Defendants as Plaintiff concedes those regulations are inapplicable to this case, *see* ECF No. 54 at 4–5.

its subcontractors, or their respective agents. ECF No. 45-2 at 16, ¶ 8(a)(i); ECF No. 47-9 at 15, ¶ 8(a)(i)(A).

Radian argues that it is not obligated to indemnify Freddie Mac because there is no evidence that Radian was negligent with respect to the incident and because R&M was not Radian's subcontractor, but rather was Miles's subcontractor. ECF No. 56 at 3–6 (Radian Opp. to Freddie Mac Mot.). Similarly, Miles argues that it is not obligated to indemnify Radian because there is no evidence that Miles was negligent with respect to the incident and because issues of fact exist as to whether Plaintiff was the sole proximate cause of the accident and injuries. ECF No. 57 at 5–7 (Miles Opp. to Radian Mot.). As discussed *supra*, factual issues exist as to whether the actions of Plaintiff or one of the Defendants was the sole proximate cause of Plaintiff's injuries. *See supra* § I. Because there has been no finding of negligence or misconduct "summary judgment on [a] contractual indemnification claim would be premature." *Quiroz v. New York Presbyterian/Columbia Univ. Med. Ctr.*, 163 N.Y.S.3d 516, 519 (N.Y. App. Div. 2022) (summary judgment inappropriate on contractual indemnification claim in labor law case where issues of fact existed regarding whether defendant was the sole proximate cause of plaintiff's injuries); *see also In re Bridge Constr. Servs. of Fla., Inc.*, 140 F. Supp. 3d 324, 331–32 (S.D.N.Y. 2015) ("Whether this contractual right of indemnification will in fact be triggered cannot be resolved on this motion for summary judgment because it depends on disputed issues of fact concerning whether [defendant] was negligent and whether that negligence was a proximate cause of the accident."). The Court therefore denies summary judgment on Freddie Mac's and Radian's indemnification claims.

B.   *Breach of Contract to Procure Insurance*

Freddie Mac seeks summary judgment on its breach of contract claim against Radian on the basis that the insurance policy Radian procured did not adhere to the terms in the Freddie Mac-Radian Agreement.  ECF No. 45 at 27.  Freddie Mac points to a letter from the Great Northern Insurance Company—Radian's insurer—disavowing coverage.  ECF No. 45-19 at 1 (March 2022 Letter).  The letter also states that Freddie Mac was not listed as an additional insured.  *Id.* at 3.  According to Freddie Mac, the letter is "irrefutable proof that Radian breached its contract with Freddie Mac" because the insurance policy "precludes the exact work Radian contracted with Freddie Mac to perform."  ECF No. 45 at 28.  Radian counters that it did procure the required insurance coverage and that the policy does contain a provision including Freddie Mac as an additional insured.  ECF No. 56 at 6.

This record presents genuine issues of material fact precluding summary judgment on Freddie Mac's breach of contract claim.  For one, while the insurance letter indicates that Freddie Mac's claim was precluded from coverage "by virtue of the Foreclosure, Trust and Leasing exclusion," *see* ECF No. 45-19 at 1, the insurance policy submitted by Radian contains a contrary "Bodily Injury and Property Damage" provision which provides coverage for "damages that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed in an insured contract for bodily injury or property damage."  ECF No. 56-1 at 250 (Insurance Policy).  Explicitly included in this provision is "bodily injury or property damage involving[] . . . foreclosed property."  *Id.*  Additionally, the insurance contract contains an "additional insured" provision which includes "[p]ersons or organizations that [the insured is] obligated, pursuant to a contract or agreement, to provide with such insurance as is afforded by this policy."  *Id.* at 366.  While the provision does not name Freddie Mac specifically, a

18

reasonable juror could find that, pursuant to the Freddie Mac-Radian Agreement, Freddie Mac would be covered by that additional insured provision. And a reasonable juror could find that the "Bodily Injury and Property Damage" provision satisfies the terms of the Freddie Mac-Radian Agreement. The Court therefore cannot conclude that the insurance policy Radian procured did not adhere to the terms of the Freddie Mac-Radian Agreement, and summary judgment is therefore denied on Freddie Mac's breach of contract claim.

\*   \*   \*

For the sake of clarity, and to assist the parties as they prepare for trial, the Court provides a summary of its decision as set forth in more detail herein. The Court grants all Defendants' motions as they pertain to Plaintiff's Section 200 claim, and that claim is therefore dismissed. Summary judgment is also granted for all Defendants as it relates to Plaintiff's Section 241(6) claim brought pursuant to Industrial Code Section 23-3.3(c). As to the Section 241(6) claims brought pursuant to Industrial Code Sections 23-1.16, 23-2.4, 23-3.3(b)(3), and 23-3.3(b)(4), Plaintiff has abandoned those claims and they are therefore dismissed as to all Defendants. All remaining claims survive for trial.

## CONCLUSION

For the reasons set forth above, the Court: (1) denies Plaintiff's motion for summary judgment on his Section 240(1) claim, *see* ECF No. 44; (2) grants Freddie Mac's motion for summary judgment on Plaintiff's Section 200 claim and denies Freddie Mac's motion for summary judgment on its contractual claims, *see* ECF No. 45; (3) grants Radian's motion for summary judgment on Plaintiff's Section 200 claim and denies Radian's motion for summary judgment on its contractual claims, *see* ECF No. 46; and (4) grants Miles's motion for summary

judgment on Plaintiff's Section 200 claim and partially grants and partially denies Miles's motion for summary judgment on Plaintiff's Section 241(6) claim, *see* ECF No. 47.

The Court understands the parties are scheduled for private mediation on September 24, 2024, and have been directed by Magistrate Judge Kuo to submit a joint status report regarding the result of mediation by September 27, 2024.  *See* ECF No. 68.  Should the mediation not result in settlement, the parties shall submit their joint pre-trial order in accordance with Section VI.B of the Court's Individual Practices on or before October 4, 2024.

SO ORDERED.

                                        */s/ Hector Gonzalez*
                                          HECTOR GONZALEZ
                                          United States District Judge

Dated: Brooklyn, New York
         August 24, 2024